UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

vs.

JULIAN RILEY,

Defendant.

DECISION AND ORDER

21-CR-6076 CJS
23-CV-6260 CJS

---

## INTRODUCTION

Now before the Court is a motion by Julian Riley ("Riley" or "Defendant") to "reconsider" his guilty plea, ECF No. 51, and a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, ECF No. 56. The Court considers the two applications together as a single motion pursuant to Section 2255, and, for reasons discussed below, denies the application.

## BACKGROUND

Defendant was convicted before this Court, upon his plea of guilty, pursuant to a written Plea Agreement, to Count 1 of Felony Information charging him with conspiracy "to possess with intent to distribute, and to distribute, 500 grams or more of a mixture or substance containing cocaine, a Schedule II controlled substance; 40 grams or more of a mixture and substance containing fentanyl, a Schedule II controlled substance; and cocaine base, a Schedule II controlled substance, in violation of 21 [U.S.C.] Sections 841(a)(1), 841(b)(1)(B) and 841(b)(1)(C)[,] [a]ll in violation of Title 21 [U.S.C.] Section 846."

1

The Plea Agreement described the factual basis for the plea and noted, *inter alia*, that Defendant was the leader of a drug trafficking organization whose members had agreed and conspired to possess with intent to distribute, and distribute, "quantities of cocaine base, fentanyl and cocaine," and that Defendant "would obtain bulk quantities of cocaine and fentanyl from various suppliers."

Significantly, for purposes of the subject motions, the Plea Agreement noted that Defendant's actual sentencing range as calculated under the advisory Sentencing Guidelines was 135 to 168 months,[1] but that the Government was agreeing not to oppose the Court's consideration of the fact that if the cocaine base involved in the case was treated as powder cocaine, Defendant's sentencing range would instead be 120 to 135 months.[2]    Defendant agreed, however, that the Court was not bound to treat the cocaine base as powder cocaine for purposes of calculating a guideline sentence, and that if the Court did not, he would not be entitled to withdraw his plea.

In the Plea Agreement, Defendant also agreed to waive the right to appeal or collaterally attack any sentence falling in or below the range of 135 to 168 months.

During the plea hearing, at which Defendant was represented by his attorney, Michael Schiano ("Schiano"), Defendant clearly acknowledged that he had been a leader of an organization that trafficked in cocaine, cocaine base, and fentanyl, as charged in the Felony Information, and that he understood he was pleading guilty to such conduct:

---

[1] Defendant faced enhanced sentencing penalties both because of the quantity of drugs involved, and the fact that he had previously been convicted, in 2015, in this Court, for conspiracy to possess with intent to distribute, and to distribute, 50 grams or more of cocaine base, 5 kilograms or more of cocaine, and 1 kilogram or more of heroin, in violation of 21 U.S.C. § 846. *See,* Plea Hearing Transcript at 11-12.
[2] The Government also agreed to a three-level reduction of Defendant's offense level for acceptance of responsibility. Plea Agreement at p. 7, ¶ 11.

THE COURT: Now, before I can accept your plea of guilty, you're going to have to tell me what you did.   In that regard I'm going to direct your attention to Page 3, Paragraph 5 of the plea agreement where it is stated that you and the government agree to the following facts. Subparagraph a. that: From in or about January 2020, through and including on or about May 28th, 2020, in the Western District of New York, and elsewhere, that you conspired with Gregory Heard, Jr., and others, to possess with intent to distribute, and to distribute 500 grams or more of cocaine, 40 grams or more of fentanyl, and cocaine base, is that true?

THE DEFENDANT: Yes, sir.

THE COURT: Subparagraph b.: You were a leader of a drug trafficking organization, the members of which did conspire to possess with intent to distribute, and distribute, a quantity of cocaine base, cocaine and fentanyl?

THE DEFENDANT: Yes, sir.

                              ***

THE COURT:  . . .   So you were members of this conspiracy, the purpose of which was to distribute cocaine base, fentanyl and cocaine; is that right, Mr. Riley?

THE DEFENDANT: Yes, sir.

THE COURT: Now, is it correct that during the conspiracy, you would obtain both quantities of cocaine and fentanyl from various suppliers; is that correct?

THE DEFENDANT: (No response.)

THE COURT: Is that true?

THE DEFENDANT: Yes, sir.

                              ***

THE COURT: And is it true that [in connection with the execution of a search warrant in this case at a location under Defendant's control,] after the premises was secured, a thorough search was conducted at the rear apartment at 154 Clifton and 40 green envelopes containing fentanyl were located in the kitchen; is that correct?

3

THE DEFENDANT: Yes, sir.

THE COURT: Approximately 7 grams of unpackaged fentanyl was located in the kitchen; is that correct?

THE DEFENDANT: Yes, sir.

THE COURT: This unpackaged fentanyl, near it, are you aware the police recovered a plate on which sat a digital scale, a spoon, numerous new and unused green envelopes, and what seemed to be fentanyl residue; is that correct?

THE DEFENDANT: Yes, sir.

THE COURT: Subparagraph f., is it true that during the execution of the warrant at 157 Clifton Street that you are now aware that investigators located additional drug trafficking materials, three small green envelopes containing fentanyl, are you aware of that and do you agree to that?

THE DEFENDANT: Yes, sir.

\*\*\*

THE COURT:  . . .  Subparagraph i. Do you agree that approximately 500 grams of cocaine base, 921 grams of cocaine and 210 grams of fentanyl are the amounts of narcotics involved in what is called relevant conduct for which you could be held accountable by the government at a trial or sentencing; do you understand agree to that?

THE DEFENDANT: Yes, sir.

\*\*\*

THE COURT: The Court does find that, based on the answers Mr. Riley has given to questions put to him by the Court and based on his acknowledgement of the allegations contained in Paragraph 5 of the plea agreement, that a factual basis does exist for his plea and the Court will accept it.

I'm now going to ask you, Mr. Riley, how, in Mr. Schiano's presence, you plead to a one-count felony information charging you with a violation of Title 21 of United States Code, Section 846: Conspiracy to possess with intent to distribute, and distribute, 500 grams or more of cocaine, 40 grams or more

of fentanyl, and cocaine base, how do you now plead: Guilty or not guilty?

THE DEFENDANT: Guilty.

Plea Hearing Transcript at 38-39, 43-44, 46, 48.

Thereafter, U.S. Probation and Pretrial Services prepared a Presentence Investigation Report ("PSR") which, among other things, discussed that Defendant had pleaded guilty to, and was being sentenced for, Conspiracy to Possess With Intent to Distribute, and to Distribute 500 Grams or More of Cocaine, 40 Grams or More of Fentanyl, and Cocaine Base 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 846, and 851. Defendant raised no objection to the PSR, and later acknowledged, at sentencing, that he had read the PSR himself and had discussed it with Schiano. See, Sentencing Transcript at 3.

At sentencing, on May 3, 2022, the Court agreed to treat the cocaine base as powder cocaine for purposes of calculating Defendant's sentence under the advisory guidelines, and sentenced him primarily to a 120-month term of imprisonment in the Bureau of Prisons ("BOP"). Nevertheless, the Court clearly indicated that Defendant was being sentenced on the charge to which he had pleaded guilty, which involved trafficking in cocaine, cocaine base, and fentanyl. See, e.g., Sentencing Transcript at 14 ("[Y]ou stand before me now, you're . . . 47 years old. . . . [a]nd you're here for sentencing after pleading guilty to conspiracy to possess with intent to distribute and distribute 500 grams or more of cocaine, 40 grams or more of fentanyl and cocaine base.").[3]

---

[3] See also, id. at 18 ("[Y]ou did tell me when you pled guilty, that while on supervised release, from in or about January 2020, through in or about May 28th, 2020, that you conspired with Gregory Heard, known as "L.J." and others, to distribute and possess with intent to distribute 500 grams or more of cocaine, 40 grams or more of fentanyl, and a quantity of cocaine base.").

Subsequently, on May 6, 2022, the Court entered the Judgment of Conviction, which accurately indicated that Defendant had been convicted of conspiracy to possess with intent to distribute, and to distribute, 500 grams or more of a mixture or substance containing cocaine, 40 grams or more of a mixture and substance containing fentanyl, and cocaine base, in violation of 21 U.S.C. § § 841(a)(1), 841(b)(1)(B), 846 and 851.

However, almost a year later, Defendant wrote to the Court, asking it to "re-evaluate" his plea.   More specifically, on March 9, 2023, Defendant filed the subject *pro se* letter motion (ECF No. 51), with the reference line, "First Step Act Time Allowance."   The letter refers to problems that Defendant claimed to have been experiencing "in the BOP", due to his conviction for conspiring to possess fentanyl.   According to the letter, Defendant had discovered that because of the "fentanyl charge," he was "ineligible" to participate in the Residential Drug Abuse Treatment Program ("RDAP"), and that he was ineligible to receive a "First Step Act time allowance." ECF No. 51.[4]   The letter indicated that when Defendant pled guilty, he was not aware that his fentanyl conviction would make him ineligible for the RDAP program and for First Step Act time credits.   Defendant stated that before writing to the Court, he had first told Schiano that he wanted to withdraw his plea, purportedly "because of the fact [he] was not involved with it [fentanyl] and [he] only accepted the fentanyl charge because it did not change the amount of time he would be sentenced to

---

[4] *See, e.g., Glover v. Warden, Fed. Bureau of Prisons*, No. 25-CV-2470 (LJL), 2025 WL 1397140, at \*2 (S.D.N.Y. May 14, 2025) ("The First Step Act of 2018 ("FSA") was passed on December 21, 2018. See Pub. L. 115-391, 132 Stat. 1594. The FSA allows an eligible prisoner to earn time credits for "successful participation in evidence-based recidivism reduction programming or productive activities." 18 U.S.C. § 3632(d)(4)(A)(i). Such credits may be applied towards early placement in prerelease custody or transfer to supervised release. Id. § 3624(g)."); *but see, Daniels v. Warden, FCI Danbury*, No. 3:25-CV-407 (VAB), 2025 WL 2098254, at \*3 (D. Conn. July 25, 2025) ("The [First Step Act] specifically excludes prisoners convicted under 21 U.S.C. 841(b)(1)(B)(vi) from being eligible for time credits[.]" Cowette, 2025 WL 969529, at \*3–4 (citing 18 U.S.C. § 3632(d)(4)(D)(lxvi)").

serve." ECF No. 51 at 1.   Defendant indicated, though, that Schiano told him that he did not need to withdraw the plea, since the Court could simply "override the ineligibility factors." *Id.*   Defendant stated, therefore, that he wanted the Court to "re-evaluate" the Plea Agreement insofar as it was preventing him from receiving "the First Step Act time allowance and RDAP Program benefits." *Id.* at 2.

Notably, Defendant's submission did not claim that there had been any confusion on his part about the fact that he had pleaded guilty to a crime involving fentanyl or cocaine base.   Rather, it merely indicated that he had not been aware, at the time he pleaded guilty, of the collateral effects that such plea would have within the BOP.

However, approximately two months later, on May 10, 2023, Defendant filed another submission, ECF No. 56, captioned as a motion pursuant to 28 U.S.C. § 2255, asserting a very different version of events concerning his plea and conviction.   Namely, it asserted that Defendant's conviction had not involved fentanyl or cocaine base, but only powder cocaine, since, by agreeing to calculate his guideline sentence without regard to the "powder-to-crack disparity," the Court had converted his conviction to one involving only powder cocaine.   Defendant therefore maintained that the Court's "oral sentence" "deleted" the references to crack cocaine and fentanyl from his conviction, and that the judgment of conviction is therefore incorrect insofar as it refers to cocaine base and fentanyl.

On the basis of those alleged facts, the submission purports to assert two claims: First, that the Government breached the Plea Agreement; and, second, that Schiano provided ineffective assistance of counsel by failing to file a notice of appeal.   Regarding

7

the first claim, the motion states, in pertinent part:

> During the May 3, 2022 sentencing hearing . . . the Court stated to the parties:
> The Government agreed to treat the plea as one totally for cocaine and that
> did reduce the sentence to the recommended guidelines to 120 to 135
> months.   The Government's plea agreement was totally for cocaine as
> recorded on the record on May 3, 2022.   Because a defendant's
> fundamental and constitutional rights were implicated when he is induced to
> plead guilty by reason of a plea agreement, Petitioner, Breach of Contract.
> [sic]   The BOP is ignoring the Government's agreed [sic] on treating the 21
> U.S.C. § § 846, 851, 841(b)(1)(B) as one solely for cocaine because the
> Government failed to remove cocaine base and fentanyl from the amended
> statement of conviction.

ECF No. 56 at p. 5; *see also, id.* at 15 ("In this instance, Julian Riley's judgment and

commitment totally reads a materially different sentence than the Judge's orally announced

sentence.").

Regarding the second claim, the motion states that Schiano should have recognized

that the judgment did not match the Court's oral sentence, and then filed a notice of appeal

on Defendant's behalf:

> [U]pon receive [sic] of the judgment and commitment's worded conviction for
> defendant's guilty plea, he should have filed with the clerk of the court and
> presented the fatal error that was made.   He did not do so.   Prejudice is
> presumed when counsel's constitutionally deficient performance deprives a
> defendant of an appeal.   . . .   As a result of counsel failing to file the
> requested Notice of Appeal on his behalf, Defendant requests a remand to
> the District Court for entry of the exact plea agreement that which the Court
> orally gave him on record from which he can take a Direct Appeal if the
> Government does not honor said plea agreement.

ECF No. 56 at 6-7.   The Court observes that while the foregoing quotation refers to a

"*requested* notice of appeal," Defendant's motion never indicates that he actually made

such a request to Schiano.

8

The Government opposes Defendant's application, maintaining that it is factually and legally meritless. *See*, ECF No. 60. For example, the Government indicates that Defendant's sworn statements at the Plea Hearing presumptively establish that his plea was knowing, intelligent, and voluntary, and that the Court should reject his subsequent attempt to recharacterize the Plea Agreement. The Government further contends that, since Defendant's ineffective assistance claim is based on the meritless assertion that the Government breached the Plea Agreement at sentencing, he has failed to show either deficient performance by Schiano, or prejudice. *See, e.g.*, ECF No. 60 at p. 15 ("The ineffective assistance argument, as far as the government can divine, is that Mr. Schiano did not file an appeal based on what the defendant is describing as a breach of contract at sentencing."). The Government also maintains that Defendant's entire motion is barred in any event by the Plea Agreement's collateral-attack waiver.

Defendant filed a reply, in which he insists that his judgment of conviction violates the Plea Agreement insofar as it refers to fentanyl, and that Schiano "failed to ensure [that the] judgment was based on the Sentencing Court's" reference at sentencing to not applying the crack-powder disparity when calculating a guideline sentence. *See*, ECF No. 63 at 3. Defendant also now asserts that, because of the Court's decision at sentencing not to apply the crack-powder disparity, the Government was somehow required to "amend the indictment's [sic] wording" to remove references to cocaine base and fentanyl. *Id*. at 4.[5] ("The government never amended the indictment's wording. "Cocaine base and fentanyl," that which the Sentencing Court deleted from the record. Thus, Defendant is prejudiced

---

[5] Defendant pled guilty to an information, not an indictment.

at present due to this neglect made by the Government that is infringing on his constitutional rights[.]").

After receiving the parties' submissions, the Court directed Schiano to submit an affidavit responding to Defendant's allegations against him, which he did.  In the sworn affidavit, Schiano asserts that he never told Defendant that, "if the Court were to calculate his sentencing guidelines without reference to cocaine base, as mentioned in the Plea Agreement, the legal result would be that Defendant's conviction would only involve powder cocaine, and not fentanyl or cocaine base."  Schiano further avers that Defendant never told him that he was not involved in trafficking fentanyl, that he wanted to withdraw his plea, or that he wanted Schiano to file a notice of appeal.

While Defendant's motion was thus fully briefed, but before the Court could issue a decision, on January 24, 2025, President Joseph Biden issued an Executive Grant of Clemency to Defendant, reducing his prison term to expire on May 16, 2025, but leaving intact and in effect the 8-year term of supervised release imposed by the Court. ECF No. 68.  According to the website of the BOP, Defendant was released from BOP custody as of May 16, 2025.

The Court has now carefully considered the parties' submissions, Schiano's affidavit, and the relevant portions of the record.

## ANALYSIS

### Defendant's *Pro Se* Status

Since Defendant is proceeding *pro se*, the Court has construed his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d

787, 790 (2d Cir.1994).

<u>Section 2255 Principles</u>

Section 2255 provides, in relevant part, as follows:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).   The Court may dismiss a section 2255 petition without conducting a hearing if the petition and the record "conclusively show" that the defendant is not entitled to relief. 28 U.S.C. § 2255(b).

Here, the Court finds that a full evidentiary hearing is not required, since the record, as supplemented by Schiano's affidavit, conclusively shows that Defendant is not entitled to relief.   For example, to the extent Defendant maintains that he was not involved in trafficking fentanyl, that he did not actually plead guilty to a crime involving fentanyl, or that the Court or Government told him that his conviction only involved powder cocaine, the petition and the record "conclusively show" that his assertions are baseless.   For example, as discussed earlier, Defendant expressly acknowledged in the Plea Agreement that the Court was not bound to treat the cocaine base as powder cocaine for purposes of calculating a guideline sentence, and that if the Court did not, he would not be entitled to withdraw his plea to the Information charging him with conspiracy to possess with intent to distribute, and to distribute, 500 grams or more of a mixture or substance containing cocaine, 40 grams or more of a mixture and substance containing fentanyl, and cocaine base.   Moreover, the transcripts clearly show that the Court never indicated that it was

11

sentencing Defendant only for his involvement with powder cocaine, contrary to what he now claims.

Furthermore, to the extent Defendant insists that he told Schiano that he wasn't involved in fentanyl, that he wanted to withdraw his plea, or that he wanted Schiano to file a notice of appeal, the Court, before whom Schiano has practiced for decades, fully credits Schiano's affidavit refuting such claims. *See, e.g., Chang v. United States*, 250 F.3d 79, 85 (2d Cir. 2001) ("At the request of the court, the record was supplemented by a detailed affidavit from trial counsel credibly describing the circumstances concerning appellant's failure to testify. We believe that with that submission the record was sufficient to support dismissal of the petition."); s*ee also, United States v. Olajumoke*, No. 19-CR-291 (LAP), 2025 WL 3074141, at *4 (S.D.N.Y. Nov. 4, 2025) ("[T]he Court finds that Petitioner did not ask Counsel to file an appeal and that no further hearing on the matter is necessary as it accepts Counsel's affidavit over Petitioner's bare assertions and concludes that the taking of live testimony is not necessary to evaluate Petitioner's claims.") (citations and internal quotation marks omitted).

In this regard, the Court observes, for example, that Defendant's claim that he was not involved with fentanyl is refuted by his own prior sworn statements and by the evidence seized during the execution of the search warrant.

Additionally, Defendant's vague suggestion that Schiano had somehow been "requested" to file a notice of appeal is unsupported by any corroborating evidence, such as any statement from Defendant as to when or how he supposedly communicated the request to Schiano.   Indeed, this glaring omission seems to dovetail with Defendant's

more-detailed contention that Schiano should have *unilaterally* filed a notice of appeal on Defendant's behalf after seeing the supposedly-incorrect judgment, which strongly suggests that Defendant never expressly asked Schiano to file an appeal. *See*, ECF No. 56 at 16 ("[U]pon receive of the judgment and commitment's worded conviction for defendant's guilty plea, he should have filed with the clerk of the court and presented the fatal error that was made.   He did not do so.").

Based on these findings, the Court will now consider Defendant's claims.

## The Claim that the Government Breached the Plea Agreement is Meritless

Defendant first claims that the Government breached the Plea Agreement by not ensuring that the judgment omitted any reference to cocaine base or fentanyl.   The Government maintains that the claim is meritless, and also barred by the Plea Agreement's collateral-attack waiver.   Since the Court agrees that the claim is clearly meritless, it need not consider the waiver argument.   In this regard, Defendant's assertion that the Court orally changed his conviction to one involving only powder cocaine is patently baseless. Consequently, it was entirely appropriate for the judgment to refer to the fact that Defendant's conviction involved cocaine, cocaine base, and fentanyl.   Therefore, even assuming *arguendo* that the Government was obligated by the Plea Agreement to ensure that the Court's judgment of commitment agreed with the Court's oral sentence, the Government did not breach such obligation.   Accordingly, this aspect of Defendant's motion is denied.

## The Claim that Schiano Provided Ineffective Assistance of Counsel is Meritless

Defendant next contends that Schiano provided ineffective assistance of counsel,

13

by failing to file a notice of appeal after the Court issued a judgment that was inconsistent with the sentence insofar as it referred to cocaine base and fentanyl.   Defendant's papers suggest two possible theories on this point: First, that Schiano should have filed a notice of appeal unilaterally after the Court issued a judgment that incorrectly referred to cocaine base and fentanyl; and, second, that Schiano failed to file a notice of appeal after Defendant expressly requested that he do so.

The first of these theories is clearly baseless, since even assuming *arguendo* that Schiano would have had an obligation to unilaterally file a notice of appeal under those circumstances, or, at least, to consult with Defendant about an appeal, there was nothing inaccurate about the judgment's reference to cocaine base and fentanyl that should have prompted Schiano either to file an appeal or to consult with Defendant about an appeal. *See, e.g., Lopez v. United States*, No. 13-CR-788 (KMW), 2017 WL 1424324, at *3 (S.D.N.Y. Apr. 20, 2017) ("Counsel has a "constitutionally-imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Roe v. Flores-Ortega*, 528 U.S. at 480.").   Consequently, there was nothing deficient about Schiano's performance in that regard.

As for Defendant's second theory of ineffectiveness, the relevant legal principles are clear concerning an attorney's duty to file a notice of appeal in response to a client's specific request:

> "[A] lawyer who disregards a defendant's specific instruction to file a notice
> of appeal acts in a manner that is professionally unreasonable, and . . . where

14

counsel's error leads to 'the forfeiture of a proceeding itself,' prejudice will be presumed." *Campusano v. United States*, 442 F.3d 770, 773 (2d Cir. 2006) (citation omitted) (quoting *Roe v. Flores-Ortega*, 528 U.S. 470 (2000)). "When counsel fails to file a requested appeal, a defendant is entitled to a new appeal without showing that his appeal would likely have had merit." *Flores-Ortega*, 528 U.S. at 477 (alterations and quotation omitted). "[E]ven after a waiver, a lawyer who believes the requested appeal would be frivolous is bound to file the notice of appeal and submit a brief[.]" *Campusano*, 442 F.3d at 771-72; *see Garza v. Idaho*, 139 S. Ct. 738, 746-47 (2019) (holding counsel's failure to file a notice of appeal after an express request by the defendant constituted ineffective assistance of counsel despite the presence of an appeal waiver in the plea agreement).

*United States v. Brown*, 702 F. Supp. 3d 127, 134-135 (W.D.N.Y. 2023).

Defendant's claim of ineffectiveness is based on the vague assertion that, at some unspecified time and through some unspecified means, Schiano was "requested" to file a notice of appeal.   However, since the Court declines to credit Defendant's assertion that he made such a request, this claim is denied.

In sum, the claims expressly set forth in Defendant's motion papers lack merit.   However, the Court liberally construes Defendant's papers as raising one additional claim that deserves discussion, namely, that Schiano provided ineffective assistance of counsel at the pleading stage, by failing to advise Defendant that his plea and conviction would make him ineligible to participate in the RDAP Program or to receive First Step Act credits, insofar as it involved fentanyl and cocaine base. That is, the Court will assume Defendant is arguing that due to ineffective assistance of counsel, his decision to enter into the "plea agreement was not knowing and voluntary because the advice he received from counsel was not within acceptable standards." *United States v. Ritter*, 700 F. App'x 10, 11 (2d Cir. 2017) (citation and

internal quotation marks omitted), as corrected (Aug. 9, 2017).

"Typically, a waiver of appellate or collateral attack rights does not foreclose an attack on the validity of the process by which the waiver has been procured, such as the plea agreement, including an ineffective assistance claim." *U.S. v. Cleveland*, No. 14–4389–cr, 643 F.App'x 66, 67 (2d Cir. Mar. 17, 2016) (*citing Frederick v. Warden, Lewisburg Corr. Facility*, 308 F.3d 192, 195 (2d Cir.2002); internal quotation marks omitted).   To establish ineffective assistance of counsel generally,

> a defendant must make two showings. First, he must demonstrate that his counsel's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) [("*Strickland*")]. Second, he must establish that he suffered prejudice—in this context, meaning that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052.

*Fulton v. Graham*, 802 F.3d 257, 265 (2d Cir. 2015). "In the context of a guilty plea, to show ineffective assistance, the petitioner must demonstrate that there is a reasonable probability that, but for counsel's errors, 'he would not have pleaded guilty and would have insisted on going to trial.'" *Phillip v. United States*, 804 F. App'x 91, 93 (2d Cir. 2020) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)).   The Second Circuit has stated that, "[t]o raise a claim despite a guilty plea or appeal waiver, the petitioner must show that the plea agreement was not knowing and voluntary, *because the advice he received from counsel was not within acceptable standards.*" *Parisi v. U.S.*, 529 F.3d 134, 138 (2d Cir. 2008) (emphasis added, citations omitted).

Here, again, the claim is that Schiano provided ineffective assistance of counsel insofar as he did not inform Defendant that his plea might have collateral effects on his

ability to participate in the RDAP program and to receive First Step Act credit, insofar as his conviction would involve fentanyl and/or cocaine base. However, to make such an argument, Defendant would first need to acknowledge that his plea and conviction actually involved fentanyl and cocaine base, which he is unwilling to do. Rather, he lamely insists that his conviction did *not* involve either substance, despite all evidence to the contrary. If then, as Defendant maintains, the Plea Agreement did not involve him being convicted for a crime involving fentanyl or cocaine base, then Schiano would have had no need to warn Defendant that his plea might result in him being unable to participate in the RDAP program or to receive First Step Act time credits.

Of course, Defendant's description of the crime to which he pled guilty is obviously incorrect.[6] However, even assuming *arguendo* that Defendant was willing to admit that his conviction involved fentanyl and cocaine base, and further assuming that Schiano failed to advise Defendant that his plea would make him ineligible for RDAP programming and First Step Act credit, and that such failure by Schiano constituted deficient performance within the meaning of *Strickland*, Defendant still has not shown prejudice therefrom. Meaning that, Defendant has not shown that if Schiano had properly advised him on this point, he would have turned down the plea offer and proceeded to trial. To be sure, Defendant has indicated that he "wants to withdraw his plea," but only "to get the fentanyl case removed."[7] Otherwise, though, he still wants the benefits of the Plea Agreement. In other words, he still wants the benefit of the Plea Agreement, just not the burden of the

---

[6] *See, e.g.,* 2255 Motion, ECF No. 56 at p. 9 ("Defendant pled guilty to a single count of conspiracy to possess with intent to distribute *cocaine*, January 26, 2022.") (emphasis added).
[7] ECF No. 51 at 1.

17

fentanyl conviction.   Moreover, his purported desire to re-do the plea "get the fentanyl case removed" is based only on his belated claim that he was not actually involved with fentanyl, which the Court rejects since it is clearly refuted by his prior sworn testimony at the plea hearing.

Consequently, Defendant has not shown prejudice from any alleged failure by Schiano to advise him concerning the Plea Agreement, and his ineffective assistance claim therefore necessarily fails. *See, e.g., United States v. Robinson*, No. CR 5:21-CR-00064-DCR-EBA-1, 2025 WL 3205867, at *8 (E.D. Ky. Oct. 1, 2025) ("[Robinson] cannot prove prejudice under *Strickland*. Even if his counsel failed to advise him that the effect of pleading guilty would make him ineligible for time credits under the First Step Act, he has failed to demonstrate that foregoing a guilty plea and taking the case to trial would have been rational under the circumstances given the substantial amount of evidence the Government had against him, the inherent disadvantages of trial, and the benefits he received (i.e., the dropped charges and three-level sentence reduction) for pleading guilty. Accordingly, Robinson cannot establish prejudice[.]"), report and recommendation adopted, No. CR 5:21-064-DCR, 2025 WL 3158915 (E.D. Ky. Nov. 12, 2025); *see also, Setiyaningsih v. United States*, No. 19-CR-198-F, 2022 WL 5240203, at *5 (D. Wyo. Aug. 30, 2022) (Finding that defendant had not shown prejudice, since, in light of the strength of the Government's case and the benefits that the defendant received under the plea agreement, "a rational person would not reject the plea agreement, regardless that the firearm conviction causes ineligibility for FSA credits.").

## CONCLUSION

For the foregoing reasons, Defendant's motions (ECF Nos. 51 & 56) are denied.

Pursuant to 28 U.S.C. § 2253, the Court declines to issue a certificate of appealability, since Defendant has not made a substantial showing of the denial of a constitutional right. The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure. The Clerk is directed to close related civil action 23-CV-6260 CJS.

       IT IS SO ORDERED.

DATED:      December 8 , 2025
                Rochester, New York

                                     CHARLES J. SIRAGUSA
                                     United States District Judge